Izaak D. Schwaiger, SBN 267888
**SCHWAIGER LAW FIRM**
130 Petaluma Avenue, Suite 1A
Sebastopol, CA 95472
Tel. (707) 595-4414
Facsimile: (707) 581-1983
E-mail: izaak@izaakschwaiger.com

John H. Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile:  (415) 561-9609
john@scottlawfirm.net

Attorneys for the Plaintiff JASON ANGLERO-WYRICK

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON ANGLERO-WYRICK,<br><br>              PLAINTIFF,<br><br>       v.<br><br>COUNTY OF SONOMA, JEREMY JUCUTAN, NIKKO MILLER, and DOES 1-25, inclusive.<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**[UNDER 42 U.S.C. § 1983]**<br><br>*JURY TRIAL DEMAND* |

COMES NOW PLAINTIFF, Jason Anglero-Wyrick who complains of defendants, and each of them, and alleges as follows:

## JURISDICTION & VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and the Fourth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2. The claims alleged herein arose in the County of Sonoma in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. §1391(b)(2).

3. Pendant state claims were timely presented to the County of Sonoma pursuant to California Government Code Sec. 910 et seq., and thereafter rejected.

## PARTIES

4. Plaintiff Jason Anglero-Wyrick (hereinafter "Jason" or "Plaintiff") is a resident of Sonoma County, California.

5. At all relevant times, Defendants Jucutan and Miller were deputy sheriffs and employees of the County of Sonoma.

6. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 25 inclusive, are unknown to the Plaintiff, who therefore sues said defendants by such fictitious names. Defendants DOES 1 through 25, and each of them, were responsible in some manner for the injuries and damages alleged herein. Plaintiff is informed and believes and thereupon alleges upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

7. In doing the acts and/or omissions alleged herein, the individual defendants, including DOES 1 through 25, acted in concert with each of said other defendants herein.

8. At all times during the incident, Deputy Jucutan and Deputy Miller acted under color of state law in the course and scope of their duties as agents and employees of the County of Sonoma.

- 1 -
COMPLAINT FOR DAMAGES

## STATEMENT OF FACTS

9. Jason Anglero-Wyrick is an African American man living in a predominantly white county. Sonoma County's population is approximately two percent African American. At the time of these events he was thirty-five years old.

10. On April 4, 2020, Sonoma County Sheriff's deputies including Deputies Jucutan and Miller were dispatched to Plaintiff's residence after receiving a rambling 911 call from a man named Clyde that Mr. Anglero-Wyrick had brandished a firearm at the reporting party from his vehicle only moments before. The reporting party identified Plaintiff by his full name, spelling it correctly, but was unable to identify the vehicle driven or whether the weapon used was a handgun or a rifle. The reporting party then told dispatch that it *may* have been a gun, but that he wasn't sure. The reporting party identified Plaintiff as wearing a black hooded sweatshirt and red shorts, and that he was with a woman who was wearing a camouflage sweater and black pants. Dispatch broadcast this information to the deputies responding.

11. Clyde was a known criminal and drug addict who had an ongoing disagreement with Plaintiff. Earlier in the day, Clyde had driven by Plaintiff's house and thrown a water bottle at Plaintiff's car. Only one week earlier, Plaintiff and his girlfriend were confronted by Clyde as he hurled racial slurs at them while at a local pharmacy. On account of his behavior, Clyde was kicked out of the pharmacy and told never to come back. Clyde's call to 911 was a form of "swatting", a criminal harassment tactic of deceiving emergency services to get them to respond to another person's address to annoy, harass, injure, or kill the intended target, which in this case was Plaintiff.

12. When the deputies arrived at Plaintiff's residence, Mr. Anglero-Wyrick was asleep inside his house. He was awoken by his fiancée, Naustachia Green, shaking him awake, and to the sound of a helicopter circling the neighborhood. Plaintiff put on shoes and went outside with Ms. Green to see what was going on. Outside his front gate, Mr. Anglero-Wyrick was met with several sheriff's deputies with weapons drawn and pointed at him. Plaintiff put his hands in the air. Ms. Green, afraid the deputies were going to shoot her fiancé, stepped in front of Plaintiff

with her hands raised in the air as well. Unlike the description provided in the 911 call, Plaintiff was dressed in black shorts and a white shirt. Ms. Green was dressed in grey pants and a black and white t-shirt. Nevertheless, the deputies made no attempt to verify Clyde's uncorroborated report or inform the couple of the reason for their presence.

13. At least three deputies held the couple at gunpoint as they stood at their front gate. Deputy Villegianti pointed his firearm at the couple and yelled, "Get on the fucking ground!" Another deputy commanded Plaintiff to get on his hands and knees and crawl to him across the gravel walkway. Plaintiff, keeping his hands in the air, responded, "Don't fucking talk to me like that!" Ms. Green pleaded with the deputies to stop.

14. Deputy Jucutan removed a black Belgian Malinois K9 named "Vader[1]" from his patrol vehicle. Vader began barking and growling and lunging at Plaintiff and Ms. Green. Deputy Jucutan commanded Plaintiff to "get on the fucking ground!" Another deputy gestured to Plaintiff and spoke to the dog, "Get 'em!"

15. Ms. Green cried out, "He's not doing anything!" About that time, while Plaintiff and Ms. Green both had their hands in the air, Deputy Miller fired his taser at Plaintiff. The barbs from the device lodged in Mr. Anglero-Wyrick's flesh and 50,000 volts of incapacitating electricity surged through Plaintiff's body. Only sixty seconds had passed from when the deputies first made contact with the Plaintiff. No warning was given prior to the taser's deployment.

16. Mr. Anglero-Wyrick fell to the ground face down with his arms still outstretched. Just as the taser was ending its cycle, Deputy Jucutan without warning released his K9 "Vader" on Plaintiff, who remained prone on the ground with his arms out to his sides. Vader clamped his jaws down on Mr. Angelro-Wyrick's right calf as Deputy Jucutan called out, "Good boy! Good boy!"

17. With the K9's teeth sunk deep into Plaintiff's leg, the dog began pulling and twisting and shaking its head, tearing open the deep puncture wounds. Mr. Anglero screamed in pain, but

---

[1] Vader's namesake is the iconic antagonist from the Star Wars series, Darth Vader, famously known for his violence and cruelty.

SCHWAIGER LAW FIRM
130 PETALUMA AVENUE, SUITE 1A
SEBASTOPOL, CA 95472

somehow summoned the discipline to place both of his hands in the small of his back and to cross his ankles over one another to demonstrate that he was not a threat.

18. Plaintiff's fifteen-year-old stepdaughter, d'Ayona, who had been standing behind the couple began screaming, "This is harassment! Get the dog off him!" and filmed the event on her cell phone. In response, Deputy Miller raised his taser and pointed it the child. After twenty seconds of the K9 continuing to tear through the flesh of Plaintiff's leg, Deputies handcuffed Plaintiff as he remained prone on the ground. After thirty seconds the dog had still not released its grasp, and continued to tear into Plaintiff's leg. Deputy Jucutan began pulling on Vader's collar, lifting the dog and Plaintiff's leg off the ground and causing the K9's teeth to tear open the growing wound even more. Jucutan continued to pull on the K9's collar, causing further injury and pain to Plaintiff who cried from the ground, "Please! Your dog is eating my leg!" Jucutan continued to pull on the K9 that was still locked onto Plaintiff's leg, and Plaintiff's body was rolled slightly to the side as a result. Deputies began yelling, "Get your face on the ground!" and Deputy Miller stepped on the back of Plaintiff's other leg to pin him down as the dog continued to tear at Jason's flesh. "My leg!" cried Jason. "Your dog's eating my leg! Please! I'm not doing anything!"

19. The K9 released its grasp only after a full ninety seconds had passed. Jason lay face down on the gravel as blood began to pool underneath him and Deputy Miller kneeled on his back, holding him down to the ground. Mr. Anglero-Wyrick called out, "You guys fucked up right now." D'ayona sobbed, "This is harassment! We didn't do anything! We got attacked! This is harassing!" In response, a deputy told her to go back in the house. Another deputy attempted to prevent her from recording. "No!" she cried out. "Your dog just bit my stepdad! This is harassment! You guys are harassing us and our family! He did not do anything! I'm a minor! I live in this house! You guys are supposed to protect *me*! And my family! That's my stepdad! He takes care of me, and my mom, and my grandmother! There is no reason for him to be getting hurt like this!"

20. Another deputy stepped in front of d'Ayona to block her ability to record, ordering her to back up. "Move!" said the fifteen-year-old. "I have the right to record this. You can step out of my way, please and thank you so I can record this." Another deputy responded, "We can let you record it, just do us a favor and don't try to incite a riot, okay?" D'ayona responded, "I'm fifteen years old. I should not be witnessing this!" to which the deputy responded, "It's your choice."

21. D'ayona replied. "You guys kill black people every day! This is not okay! We have the same rights as everybody else in this country does! This is not okay!"

22. Deputies searched Plaintiff's residence and failed to locate any weapons of any kind, let alone a gun. Deputies recontacted the reporting party, who became uncooperative and refused to speak with them. Nevertheless, Deputies Jucutan, Miller, and others whose identities are not presently known, conspired to arrest Plaintiff and have him prosecuted for crimes that he did not commit, so as to punish Mr. Anglero-Wyrick for refusing their commands to crawl on the ground, and more importantly to secure a conviction that might bar a civil lawsuit for excessive force.

23. Accordingly, Deputies Jucutan, Miller, and others arrested Plaintiff for two counts of California Penal Code Sec. 69, resisting an executive officer by the use of force and violence. Owing to his injuries, Mr. Anglero-Wyrick could not be booked at the jail, so he was taken to a local hospital where he remained for several weeks before being released. Plaintiff's fiancée was arrested for battery on a police officer and taken to jail.

24. The Sonoma County District Attorney's Office filed a felony complaint against Mr. Angelro-Wyrick on April 6, 2020. A spokesperson for the office said, "The evidence received so far indicates that those officers attempted to detain him and he physically resisted them." On information and belief, the Sonoma County District Attorney's Office had not yet reviewed the body-worn camera videos of these events when their charging decision was made.

25. Immediately following the incident, the Sonoma County Sheriff's Office enlisted the help of Cole Pro Media and Critical Incident Videos, LLC, to craft a press release designed to whitewash the actions of the deputies, and to vilify Plaintiff. In their press release, the Sheriff's Office wrote, "Anglero-Wyrick is known to law enforcement and has a history of violent felonies.

They learned he is on parole for assault with a deadly weapon… Vader bit him on the right leg but he continued to kick with his left leg. After a struggle, deputies were ultimately able to handcuff Anglero-Wyrick."

26. But the same day, d'Ayona published her 18-minute video of the encounter to YouTube, where it was shared by journalist and civil rights activist Shaun King and quickly went viral, receiving more than 2.8 million views in just a few short days. Comments to the Sheriff's official Facebook page began accusing the department of a whitewash. "Lies." One commenter said. "The video says different."

27. In response, the Sheriff's Office released their own professionally edited video the following day, designed to vilify Plaintiff, and posted it to the department's official Facebook page, commenting, "Vader did a great job. Time for a treat!"

28. On June 2, 2020, having reviewed the videos depicting these events, the Sonoma County District Attorney's Office moved to dismiss all charges against Plaintiff, citing a lack of sufficient evidence.

## STATEMENT OF DAMAGES

29. As a result of the acts and/or omissions alleged herein, Plaintiff suffered general damages including pain, disfigurement, fear, anxiety, humiliation, and disability in an amount according to proof.

30. Plaintiff suffered multiple puncture wounds, and ultimately lost significant muscle mass in his left leg. The K9's attack left a hole as big as a baseball in Jason's leg, requiring multiple reconstructive surgeries to repair. Plaintiff's leg remains grossly disfigured from scarring, and he suffers permanent nerve damage and loss of mobility on account of the acts of these defendants.

31. Plaintiff's serious physical injuries will likely necessitate continuing medical treatment and related expenses in amounts to be determined according to proof.

32. The acts and omissions of Deputies Miller, Jucutan, and others were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights

SCHWAIGER LAW FIRM
130 PETALUMA AVENUE, SUITE 1A
SEBASTOPOL, CA 95472

of Plaintiff. Plaintiff therefore prays for an award of punitive and exemplary damages against these defendants in an amount according to proof.

33. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees and costs.

### CAUSES OF ACTION
#### FIRST CAUSE OF ACTION

[42 U.S.C. §1983 – FOURTH AMENDMENT – EXCESSIVE FORCE – AGAINST DEPUTIES MILLER AND JUCUTAN]

34. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

35. Deputies Miller and Jucutan violated the Plaintiff's clearly established right to be free from the intentional and unreasonable use of excessive force as guaranteed by the Fourth Amendment to the United States Constitution.

36. An objectively reasonable officer would have known that the use of force upon the Plaintiff was excessive and could cause serious injury.

37. These defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the Plaintiff's rights.

38. These defendants' misconduct was the moving force that caused Plaintiff's injuries.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

#### SECOND CAUSE OF ACTION
[42 U.S.C. §1983 – FAILURE TO INTERVENE – DEFENDANTS MILLER AND DOES 1-25]

39. Plaintiffs hereby allege and incorporate by reference as though fully set forth herein all prior paragraphs of this Complaint.

40. Defendant Miller and Does 1-25 had a duty to intercede when Deputy Jucutan's K9 did not release its bite and continued tearing at Plaintiff's leg after Plaintiff had plainly demonstrated that he was not resisting by crossing his ankles and putting his hands in the small of his back, and especially after that point at which Plaintiff was handcuffed. Defendant Miller and Does 1-25 had the time, ability, and opportunity to observe what was happening to Plaintiff and to stop it. They

owed Plaintiff that basic duty. But these defendants stood by, and Defendant Miller in fact *stood on* Plaintiff as he was mauled by the police dog for well over a minute, and these defendants did nothing to stop the outrageous assault occurring before them.

41. Any objectively reasonable officer would have known it was necessary to intercede and intervene to stop Plaintiff from being seriously injured or killed.

42. Defendants Miller and Does 1-25's failure to intercede and intervene were moving forces that caused Plaintiff's injuries and needless suffering.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
[42 U.S.C. § 1983 – MALICIOUS PROSECUTION –
AGAINST DEPUTIES MILLER, JUCUTAN, AND DOES 1-25]

43. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

44. Deputies Miller, Jucutan, and Does 1-25 caused Mr. Anglero-Wyrick to be prosecuted knowing that the prosecution was unsupported by probable cause. In so doing, these deputies acted out of malice in an effort to retaliate against Mr. Anglero-Wyrick for refusing to follow orders to crawl on the ground and because of his race. These deputies further acted out of malice by initiating the prosecution so as to deny Mr. Anglero-Wyrick the ability to seek redress in the courts for their use of excessive force, and to cover for this constitutional violation.

45. As a direct and proximate result of these acts and omissions, Plaintiff was denied his most basic constitutional rights and as a result, needlessly faced mental and emotional distress, humiliation, embarrassment, and anxiety.

46. These defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to the Plaintiff's rights.

47. This fraudulent and malicious action against Plaintiff was ultimately dismissed in Plaintiff's favor.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
[42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS AND PRACTICES – AGAINST COUNTY OF SONOMA]

48. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

49. Through its final policymakers the County of Sonoma, acting with deliberate indifference to the rights of Mr. Anglero-Wyrick, and of the public in general, knowingly maintained, enforced, and applied customs and practices of:

   a. Encouraging, accommodating, or ratifying the use of excessive, unreasonable, and sometimes deadly force by its deputies;

   b. Encouraging, accommodating, or facilitating a code of silence among deputies, employees, and supervisors, pursuant to which false reports were generated, excessive and unreasonable force was covered up, whistleblowers were punished, internal investigations were performed with predetermined outcomes, and documented instances of perjury and dishonesty were ignored. On information and belief, no Sonoma County deputy has *ever* reported another for the use of excessive or unnecessary force;

   c. Employing and retaining deputies who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

   d. Inadequately supervising, training, and disciplining deputies who the County knew or in the exercise of reasonable care should have known were violent, abused their authority, and mistreated members of the public;

   e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the reckless and intentional misconduct by deputies;

   f. And by NEVER disciplining deputies for excessive force, no matter the circumstances, thereby adopting a de facto policy that deputies would never be disciplined no matter how much force they used no matter what. Deputies Miller

- 9 -

and Jucutan were aware of this practice, and therefore reasonably believed that they would not be held accountable for any force they used, no matter how egregious.

50. By reason of the aforementioned customs and practices, Plaintiff was grievously injured and subjected to unbearable, unnecessary, and excruciating pain and suffering.

51. The County of Sonoma through officials named and unnamed had actual or constructive knowledge of the constitutionally deficient customs and practices alleged above. But despite this knowledge, the County of Sonoma accepted and condoned these illegal customs and practices, thereby ratifying them, and acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to rights of Plaintiff, and the general public.

52. These customs and practices were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiff.

53. By reason of the aforementioned acts and omissions, Mr. Anglero-Wyrick was brutally attacked and injured without legal justification.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## PENDENT STATE CLAIMS
### FIFTH CAUSE OF ACTION
[NEGLIGENCE PER SE – DEFENDANTS COUNTY OF SONOMA AND JUCUTAN]

54. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

55. Defendant Jucutan, while working in the course and scope of his employment as a Sonoma County deputy sheriff, employed negligent tactics and intentionally and/or without due care seriously injured Jason Anglero-Wyrick. Jason's injuries directly resulted from Jucutan's unsafe, improper, unnecessary, and negligent tactics, and as a result of these intentional and negligent acts, Plaintiff suffered serious and lasting injury and disfigurement. Jucutan lacked any reasonable justification for the injuries he inflicted on Plaintiff.

56. Jucutan's actions were in direct violation of Cal. Pen. Code § 203, mayhem.

57. Jucutan's actions were in direct violation of Cal. Pen. Code § 243(d), battery causing serious bodily injury.

58. Jucutan's actions were in direct violation of Cal. Pen. Code § 245(a)(1), assault with a deadly weapon.

59. Jucutan's actions were in direct violation of Cal. Pen. Code § 245(a)(4), assault with force likely to cause great bodily injury.

60. Jucutan's actions were in direct violation of Cal. Pen. Code § 399.5, failure to exercise ordinary care with trained attack dog that bites human being.

61. The violations of these laws were a substantial factor in causing Plaintiff's injuries.

62. The County of Sonoma is vicariously liable for the unlawful acts and omissions of Deputy Jucutan as alleged herein.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
[NEGLIGENCE – DEFENDANTS COUNTY OF SONOMA AND JUCUTAN]

63. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

64. The present action is brought pursuant to §§ 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government Code, as a public employee, Defendant Jucutan is liable for injuries caused by his acts or omissions to the same extent as a private person. At all times mentioned herein, Deputy Jucutan was acting within the course and scope of his employment and/or agency with Defendant County of Sonoma. As such the County is liable in *respondeat superior* for the injuries caused by the acts and omissions of this defendant pursuant to § 815.2 of the California Government Code.

65. Defendant Jucutan negligently and without due care released a K9 officer on Plaintiff, without warning and without legal justification. Plaintiff was seriously injured as a proximate and direct cause of this negligent conduct.

66. The violent, prolonged, and needless mauling of Plaintiff occurred as a result of the absence of due care for the safety of others, and constituted an unreasonable, unwarranted, and excessive use of force which manifested an unreasonable risk of injury to Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
[BANE ACT (CAL. CIVIL CODE § 52.1) – DEFENDANTS MILLER, JUCUTAN, AND DOES 1-25]

67. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

68. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with Plaintiff's free exercise and enjoyment of rights secured by the Constitution and laws of the United States and of the State of California, in violation of California Civil Code § 52.1.

69. As a direct and proximate result of Defendants' violation of Civil Code § 52.1, Plaintiff suffered deprivations of his constitutional rights, and suffered damages as set forth herein.

70. Plaintiff is entitled to an award of his reasonable attorney's fees pursuant to Civil Code § 52.1(h).

71. Plaintiff is entitled to treble damages, but in no case less than $4,000.00, and an award of his reasonable attorney's fees pursuant to Civil Code § 52(a).

72. Under the provisions of California Civil Code §52(b), Defendant is further liable for punitive damages for each violation of Civil Code §52.1, reasonable attorney's fees and an additional $25,000.00.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1. For compensatory and economic damages according to proof;
2. For general damages according to proof;
3. For an award of exemplary or punitive damages against the individual defendants;

4. For an award of attorneys' fees and costs as permitted by law; and

5. For such other and further relief as the Court may deem necessary and appropriate.

**JURY TRIAL DEMANDED**

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: March 22, 2021                                        **SCHWAIGER LAW FIRM**


By: /s/ *Izaak D. Schwaiger*
Izaak D. Schwaiger
Attorney for Plaintiff

- 13 -
COMPLAINT FOR DAMAGES